**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **TIFANY GREEN,**<br><br>*Individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>*v.*<br><br>**ESKENAZI HEALTH**<br>c/o Julie M. Conrad<br>720 Eskenazi Avenue<br>Fifth Third Office Building – 5th Fl.<br>Indianapolis, IN 46202<br><br>Defendant. | Case No. 1:25-cv-1533-JRS-MJD<br><br>**PLAINTIFF'S FIRST AMENDED CLASS ACTION AND COLLECTIVE ACTION COMPLAINT**<br><br>***(Jury Demand Endorse Hereon)*** |

Plaintiff Tifany Green, on behalf of herself and all others similarly situated, for her First Amended Class and Collective Action Complaint ("Amended Complaint") against Defendant Eskenazi Health (hereinafter also referred to as "Eskenazi" or "Defendant"), states and alleges the following:

## INTRODUCTION

1. The Fair Labor Standards Act of 1938, as amended (the "FLSA"), 29 U.S.C. § 201, *et seq.*, is a broadly remedial and humanitarian statute designed to correct "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers[,]" 29 U.S.C. § 202(a), as well as "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Ark Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981). The FLSA required Defendant Eskenazi to pay all non-exempt employees at least one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours each workweek. 29 U.S.C. § 207. Moreover, the Indiana

Wage Payment Statute (Ind. Code § 22-2-5, *et seq.*) (the "IWPS" or "Indiana Law") requires, *inter alia*, payment of all wages due to non-exempt employees in a timely manner. Plaintiff brings this case on her own behalf and on behalf of those similarly situated, both under federal and state law, to redress Defendant's violations of these laws, as is more fully set forth herein.

2. With Count One of this Complaint, Plaintiff seeks to prosecute her FLSA claims as an FLSA collective action pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability… may be maintained against any employer … by any one or more employees for and in behalf of [herself] or themselves and other employees similarly situated… [who] gives [her] consent in writing to become such a party and such consent is filed in the court in which such action is brought" on behalf of herself and such other members of a collective of persons who subsequently file consents to join the action, as is more specifically defined in paragraph 62, below (the "FLSA Collective").

3. With Count Two of this Complaint, Plaintiff brings claims as a class action under Fed. R. Civ. Pro. 23 ("Rule 23") on behalf of herself and a class under the IWPS, as described fully in paragraph 75 below (the "State Law Class").[1] Plaintiff seeks to recover unpaid regular and overtime compensation, liquidated (treble) damages, costs and attorney fees, and all other available damages under the IWPS as a result of Defendant's failure to pay Plaintiff and the putative class their full amounts owed in a timely manner under the IWPS.

4. Plaintiff, on her own behalf and on behalf of the FLSA Collective and the State Law Class, seeks compensatory, statutory, exemplary, and punitive damages, declarative and

[1] Some members of the FLSA Collective may also be members of the State Law Class, as both are defined hereinafter, as is the Named Plaintiff.

injunctive relief, as well as attorneys' fees, costs, and such other relief as the Court may deem just and appropriate.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

6. This Court has supplemental jurisdiction over Plaintiff's claims under Indiana Law (specifically, the IWPS) because those claims are so related to the FLSA claims as to form part of the same case or controversy. 28 U.S.C. § 1367.

7. Venue is proper in this District and division pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and division, has its principal place of business in this District, and/or because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

8. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

9. Plaintiff Green is an individual, a citizen of the United States, and a resident of Camby, Indiana. Plaintiff Green has completed and filed a "CONSENT TO JOIN" this litigation which was previously attached to the original Complaint (ECF No. 1-1) as Exhibit A (which provides that Plaintiff Green authorizes "the filing and prosecution of claims in [her] name and on [her] behalf, to contest the failure of Eskenazi Health, and/or its parents, subsidiaries, predecessors, successors, ownership, affiliated, and related entities, to pay [her] proper wages,

including but not limited to straight and overtime wages, under federal and/or state law"), and which is fully incorporated by reference herein.[2]

10. Defendant Eskenazi is an Indiana nonprofit corporation with its principal place of business and main campus at 720 Eskenazi Avenue, Indianapolis, IN 46202.[3] Eskenazi is administered by the Health & Hospital Corporation of Marion County, Indiana.[4]

11. As represented in its "Annual Comprehensive Financial Report," Eskenazi is comprised of (but not necessarily limited to), "the Sidney and Lois Eskenazi Hospital, a 336 bed general acute care hospital; the Sandra Eskenazi Outpatient Care Center, an outpatient specialty care facility co-located on the Hospital campus; the Eskenazi Health Center … that operates a network of primary care centers throughout Marion County, Indiana; the Sandra Eskenazi Mental Health Center, a Community Mental Health Center (CMHC) that provides behavioral health services throughout Marion County, Indiana; and IEMS, the county-wide emergency ambulance service."[5]

## FACTUAL ALLEGATIONS

### Defendant's Business and Defendant's Status as an Employer

12. Defendant Eskenazi has a staff of over 5,000 at facilities both on and off its main downtown campus, including at the network of Eskenazi sites.[6]

---

[2] Although Plaintiff Green files this Amended Complaint, her individual claims extend from when she filed her initial consent form on July 31, 2025 (ECF No. 1-1).

[3] *See* https://www.eskenazihealth.edu/locations/main-campus (last accessed Nov. 5, 2025).

[4] *See* Annual Comprehensive Financial Report of the Health and Hospital Corporation of Marion County, Indiana (June 27, 2024) at 2 (*available at* https://secure.in.gov/health/cshcr/files/2023-ESKENAZI-HEALTH-150024-AFS.pdf) (last accessed Nov. 5, 2025).

[5] *Id.*

[6] *See* Eskenazi "Fast Facts," *available at* https://www.eskenazihealth.edu/docs/default-source/default-document-library/fast-facts.pdf (last accessed Nov. 5, 2025).

13. Defendant is an "employer" of Plaintiff, and the members of the FLSA Collective and the State Law Class, within the meaning of the FLSA, 29 U.S.C. § 203(d).

14. Defendant is a person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, within the meaning of the IWPS, Ind. Code § 22-2-5-1.

15. Defendant utilizes non-exempt employees, including Plaintiff, and the members of the FLSA Collective and State Law Class, in furtherance of its business purposes.

16. At all times relevant, Defendant was an enterprise within the meaning of 29 U.S.C. § 203(r).

17. At all times relevant, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1).

18. Defendant operates and controls an enterprise engaged in commerce, with annual gross volume of business exceeding $500,000.00.

19. At all times relevant, Defendant was an employer of Plaintiff, the members of the FLSA Collective, and the State Law Class as Defendant exercised the power to hire or fire employees; supervised and controlled the employees' work or conditions of employment; determined employees' rates and methods of payment; and maintained or was required to maintain records, including employment records.

**Plaintiff's and the members of the FLSA Collective's and the State Law Class's Non-Exempt Employment Statuses with Defendant**

20. Plaintiff Green is a current employee of Defendant. Since approximately June 2022, Plaintiff has been a Financial Counselor at Defendant's West Side Clinic located at 2732 West Michigan Street, Indianapolis, IN 46222. Her role is to provide advice and guidance to patients regarding insurance and payment of hospital bills. Prior to starting her role as a Financial

Counselor, Plaintiff worked in Registration at Defendant's Outpatient Care Center, located on the main hospital campus, from approximately December 2021 to June 2022.

21. Throughout her tenure working for Defendant, Plaintiff Green has been classified as a non-exempt employee by Defendant and paid on an hourly basis. Plaintiff Green is a full-time employee and, at relevant times, is scheduled to work from 8:30 a.m. to 5:00 p.m., Monday through Friday. Plaintiff Green clocks in and out each day to keep track of her time worked as required by Defendant.

22. Defendant also classifies members of the FLSA Collective and the State Law Class as non-exempt, hourly-paid, employees.

23. At all times relevant, Plaintiff and members of the FLSA Collective and the State Law Class were employees within the meaning of 29 U.S.C. § 203(e).

24. At all times relevant, Plaintiff and members of the FLSA Collective and the State Law Class were employees engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 207.

**Defendant's Unlawful Failure to Timely Pay all Wages Owed, Including Regular Wages and Overtime Compensation**

25. The FLSA required Defendant to pay overtime compensation to its employees at the rate of one and one-half times their regular rate of pay for the hours they worked in excess of forty (40), and/or provided other pay requirements as applicable. 29 U.S.C. § 207. In addition, the IWPS required every person, firm, association, or corporation doing business in Indiana to pay each employee the amount due at least semimonthly or biweekly. IWPS § 22-2-5-1.

26. Plaintiff and members of the FLSA Collective and the State Law Class regularly worked more than forty (40) hours in a single workweek.

27. Although Defendant suffered and permitted Plaintiff and members of the FLSA Collective and the State Law Class to work non-overtime hours, and overtime hours over forty (40) hours per workweek, Defendant failed to pay Plaintiff and members of the FLSA Collective and the State Law Class overtime at a rate of one and one-half times the regular rate of pay for all hours worked over forty (40) in a workweek, as well as non-overtime wages for all non-overtime hours worked. As a result, Plaintiff and the members of the FLSA Collective and the State Law Class were willfully not properly paid overtime compensation for their overtime hours worked as required by the FLSA, 29 U.S.C. § 207, and overtime and non-overtime hours promptly as required by the IWPS.

28. Instead of compensating Plaintiff Green and the members of the FLSA Collective and State Law Class at one and one-half times their regular hourly rates for hours more than forty (40) hours per workweek, as further explained below, Defendant paid Plaintiff and the members of the FLSA Collective and the State Law Class less than one and one-half times their regular hourly rates for hours more than forty (40) hours per workweek, as well as failed to pay for all overtime and non-overtime hours worked promptly.

29. Defendant shortchanged its non-exempt employees and failed to pay overtime compensation through unlawful practices that do not pay all overtime hours worked at one and one-half times their regular hourly rates for hours more than forty (40) hours per workweek, which likewise resulted in the failure to pay for all overtime and non-overtime hours worked promptly.

30. Defendant consistently, willfully, and intentionally failed to pay Plaintiff and the members of the FLSA Collective and the State Law Class for all hours, including overtime hours, worked, at the statutory overtime rate required, 29 U.S.C. § 207, as well as failed to pay

overtime and non-overtime hours worked promptly and was not acting in good faith, IWPS § 22-2-5, *et seq.*

**<u>Defendant's Failure to Pay All Hours, Including Overtime Hours, Worked as a Result of Defendant's Time Editing and/or Rounding Practices and/or Policies</u>**

31. Defendant failed to pay Plaintiff and the members of the FLSA Collective and the State Law Class for all hours, including overtime and non-overtime hours, worked as a result of Defendant's time editing and/or rounding practices and/or policies.

32. More specifically, Defendant has a time rounding and/or editing policy, and time manipulation practices in conformity with this policy, that led to less time paid than time worked for Plaintiff, and for the members of the FLSA Collective and the State Law Class, at the beginning and the end of their workdays.

33. At the beginning of their workdays, Plaintiff and the members of the FLSA Collective and the State Law Class clocked in and performed the principal activities of their jobs, but Defendant generally did not pay them for all of their time worked. Likewise, Plaintiff Green and the members of the FLSA Collective and the State Law Class regularly worked, stopped working, and clocked out at the end of their workdays, but Defendant generally did not pay them for all of their time worked. Instead, Defendant paid them based on post-edited, rounded, modified, and inaccurate and/or incomplete records which do not include all the compensable work required by, performed for, and to the benefit of Defendant. Defendant willfully and intentionally manipulated both the beginning and end of shift time records of Plaintiff and the members of the FLSA Collective and the State Law Class to reflect less time worked when Defendant submitted these employees' records to payroll, resulting in less time paid than time worked.

34. Specifically, Defendant has a time rounding policy in which work time tracked in Defendant's timekeeping system is automatically "rounded" to the nearest quarter of an hour and to the employee's detriment – *i.e.*, at the beginning of a shift, if an employee punches in and starts working between 8:53 a.m. and 8:59 a.m., the time worked is rounded to 9:00 a.m. Likewise, at the end of a shift, time punches up to seven minutes are rounded to the nearest quarter of an hour and to the employee's detriment – *i.e.*, if an employee stops working and punches out between 3:01 p.m. and 3:07 p.m., the employee's time worked is rounded down to 3:00 p.m. This is all despite Defendant's timekeeping and payroll system's intrinsic and actual ability to pay all time worked as explicitly tracked in Defendant's system.

35. This seven minute rounding policy inures to Defendant's benefit because, as set forth below, employees, including Plaintiff and the members of the FLSA Collective and State Law Class, routinely and materially clock in upon arriving and start working at the beginning of their shift, and stop working and clock out at the end of their shift, but this time is not counted as hours worked at the time Defendant issues payroll despite its ability to exactly track and pay for all the time worked as recorded in Defendant's timekeeping system. Further, employees, including Plaintiff and the members of the FLSA Collective and State Law Class, cannot clock in more than seven minutes early but are compelled to clock in before their technical shift time because Defendant will discipline employees who clock in "late" and are not working at the start of their shifts. To avoid being disciplined, therefore, it becomes incumbent to clock in early, which, over time, further inures to Defendant's benefit and the detriment of the effected employees subject to the seven minute rounding policy.

36. By way of example and with regard to Plaintiff Green specifically, throughout her tenure as an employee for Defendant, she routinely performed (and continues to perform)

compensable work after clocking into Defendant's timekeeping system at the beginning of her shift, and compensable work prior to clocking out of Defendant's timekeeping system at the end of her shift, for which she is not and has not been paid by Defendant due to Defendant's time rounding policy. During her tenure with Defendant, Plaintiff Green has worked both in-office at Defendant's West Side Clinic and she has worked from home. Plaintiff Green's schedule typically has her alternating between the two settings on a week-by-week basis (*i.e.*, one full week working in office, followed by one full week working from home, followed by a week back in-office, etc.). Whether working in office or from home, Ms. Green followed the same Monday-Friday schedule, which includes, by way of example, clocking in between 8:23 a.m. and 8:29 a.m. and then starting to work, and clocking out between 5:01 p.m. and 5:07 p.m. when she stops working. Importantly, whether working in office or working from home, Plaintiff performed (and continues to perform) compensable work as recorded in Defendant's timekeeping system – the system that Defendant utilizes to keep track of time worked – for which she is not and has not been paid by Defendant as a result of Defendant's time rounding policy.

37. On days when Ms. Green works in-office, she routinely arrives for her shift and clocks in at or around 8:23 a.m. and then begins working. This is the earliest that Ms. Green is allowed to clock-in without penalty. Were Ms. Green to clock in any earlier – 8:20 a.m., for instance – then Ms. Green's start time for computing her pay would be rounded not to 8:30 a.m., but to 8:15 a.m. And then, significantly, Ms. Green would be accused by Defendant of "time theft" by "taking" 15 minutes of unapproved overtime, and be subject to discipline.

38. At the same time, Defendant mandates not merely that employees clock in by the start of their shifts (say, for instance, 8:30 a.m.), but that they be at their stations and working by

8:30 a.m. If employees are but a moment late, they risk being subject to formal discipline under Defendant's policies for timeliness and tardiness. Hence, to ensure that they are at their stations and working no later than their scheduled shift start, employees must arrive and clock in well before the actual start of their shift. Defendant's policies intentionally create a powerful incentive for employees to arrive early and perform work that, due to a "rounding" system that intentionally and non-neutrally adheres to Defendant's benefit, goes unpaid.

39. Ms. Green's daily routine reflects the impact of Defendant's policies and the resulting accumulation of unpaid compensable time. As stated above, when working in-office, Ms. Green typically clocks in at approximately 8:23 a.m. and starts working, performing the actual, principal activities of her job. This is the earliest that Ms. Green can clock-in without penalty. The distance from the time clock to her work area is short (mere seconds), and often she is accompanied by colleagues (who face the same clock-in pressures as Ms. Green, and similarly clock-in prior to the start of their shifts and begin working, performing the actual, principal activities of their jobs, prior to the technical shift start time) with whom she discusses the necessary job duties of the day, patient issues, and other required information. Moreover, Plaintiff and the members of the FLSA Collective and State Law Class provide patient services directly to clients (*i.e.*, Defendant's patients) while on the clock (but not paid due to the time rounding), including prior to the technical shift start time and after the technical shift end time within the seven minute rule. These clients are typically already waiting when Ms. Green arrives, and often approach her and begin talking to her, requiring her to start performing her patient-care duties upon clocking in, before she even gets to her desk – whether that is 8:23 a.m. or 8:28 a.m. As a result, Ms. Green routinely starts work and performing tasks related to her job prior to her shift start at 8:30 a.m.

40. Similarly, at the end of her shift, it is frequently difficult for Ms. Green to end performing her job precisely at 5:00 p.m., because the demands of her position will keep her past 5:00 p.m., and often she has an actual patient at her desk whom she is still assisting. Therefore, Ms. Green frequently performs work past the end of her shift, including continuing to talk to patients, entering notes, and updating files, and clocks out after the end of her shift, but is only paid for work performed up to the scheduled end of her shift (5:00 p.m.). If Ms. Green clocks out at 5:04 p.m., or 5:06 p.m., her time is rounded back to 5:00 p.m.[7] Hence, at the end of Plaintiff's and the members of the FLSA Collective's and State Law Class's shifts, Defendant's policies – which *de facto* require employees to clock in and start working early, clock out late, and face discipline if they clock in too early at shift starts or clock out too early at shift ends – lead to non-neutral time-rounding practices that inure to Defendant's benefit and routinely result in compensable work being unpaid. Meanwhile, leaving prior to 5 p.m. is regularly not an option: putting aside that Plaintiff would be subject to discipline if she left early, leaving early is also not an option simply because the workload is too demanding.

41. When working from home, Plaintiff Green is also penalized by Defendant's non-neutral time-rounding practices. Before she is even able to clock in at home, Ms. Green must first log into Defendant's system through her home computer. This is not a short process and can often take over 5 minutes while Ms. Green actively stands by. Only after the system has started up can Ms. Green then clock in. Defendant's rounding system does not compensate Ms. Green – or any remote worker – for start-up processes that necessarily precede clocking in on a daily

---

[7] Meanwhile, if Ms. Green works past 5:07 p.m. without prior approval, she again would face accusations of time theft and of taking unauthorized overtime – reinforcing a system whereby employees routinely work and clock out up to 7 minutes past the shift end without compensation – "rounding" of compensable time that is designed to inure to Defendant's benefit.

basis. At the end of her days, Plaintiff again faces the challenge of ending her day precisely at 5:00 p.m. when the work demands do not subside, and often she works past 5:00 p.m.

42. Although Defendant suffered and permitted Plaintiff and the members of the FLSA Collective and the State Law Class to work more than forty (40) hours per workweek, Defendant failed to pay Plaintiff and the members of the FLSA Collective and the State Law Class overtime at a rate of one and one-half times the regular rate of pay for all hours worked over forty (40) in a workweek. *See* 29 C.F.R. §§ 785.11, 785.13. Though Plaintiff and the members of the FLSA Collective and the State Law Class regularly complete tasks that are required by Defendant, are performed for Defendant's benefit, and constitute part of their principal activities and/or are integral and indispensable to their principal activities before their shift starting times (and after shift ending times), these workers are not paid for the time spent performing these tasks because Defendant unilaterally deducted this time worked, and Defendant sat back and accepted the benefits of this work without compensating them for this work, regardless of the fact that compensable work was completed. *See* 29 C.F.R. §§ 785.11, 785.13. As a result, Plaintiff and the members of the FLSA Collective and the State Law Class were not properly paid for many of their hours worked as required by the FLSA and state law.

43. These rounding policies and practices and how they inured to Defendant's benefit further were the result of Defendant intentionally, knowingly, and willfully deducting time worked to reduce labor costs notwithstanding how Defendant's editing and/or rounding time manipulation policies violate Department of Labor regulations which require both that employees' time be rounded "to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour" and that the method "will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." 29 C.F.R. § 785.48(b). The

result of the rounding system is that Defendant's failure to pay Plaintiff Green and the members of the FLSA Collective and the State Law Class for all hours worked, is in violation of the FLSA, 29 C.F.R. § 785.48(b), and the timely payment requirements of Indiana Law.

44. Defendant's time rounding and/or editing policy, and time manipulation practices in conformity with this policy, are not neutral, facially or otherwise.

45. Defendant's pay practices were and are the result of systematic and company-wide policies originating at the corporate level. Defendant's policies with respect to time editing and time rounding resulted from knowing or reckless executive decisions. Pursuant to the FLSA, 29 C.F.R. § 785.13, Defendant Eskenazi "cannot sit back and accept the benefits [of additional work completed by Plaintiff Green and other members of the FLSA Collective and the State Law Class] without compensating for them. … Management has the power to ….[and] must make every effort to" ensure all work completed before, and after, shifts was paid in accordance with the FLSA and state law. *See id.*

46. Defendant, through its supervisors and managers, knew that Plaintiff Green, and the members of the FLSA Collective and the State Law Class, were working the time for which they were not paid, as a result of Defendant's time-keeping, time recordation, and subsequent time rounding and editing, and thus Defendant's actions were deliberate and willful within the meaning of the FLSA, and Defendant lacked a good faith basis for its actions. Defendant knew about the overtime compensation requirements of the FLSA or acted in reckless disregard as to Defendant's obligations under the FLSA.

47. As a result of Defendant's time manipulation and pay deprivation policies/practices, Plaintiff Green, and the members of the FLSA Collective and the State Law Class, were not paid for all hours worked, including overtime and non-overtime hours worked.

As a result of the time rounding/editing employed by Defendant, Defendant's rounding/editing practices have created a system that virtually always rounds against Plaintiff Green, and the members of the FLSA Collective and the State Law Class, and the rounding is nearly always in Defendant's favor. The rounding policies also caused Defendant to violate the FLSA, Indiana Law, and the Department of Labor regulations by docking compensable hours and pay, and thereby failing to pay for all hours suffered or permitted to work. 29 C.F.R. §§ 785.48, 785.13.

48. The deducted time worked was compensable as overtime or straight time hours worked as the work was required by Defendant; the work was performed for Defendant's benefit and constituted part of employees' principal activities; and the work was a necessary, integral, and indispensable part of their principal activities. However, it was not fully paid on a straight time regular rate basis (during non-overtime weeks), nor was overtime for it paid at the rate of one and one-half times the regular rate for the hours worked in excess of forty (40) (during overtime weeks), as required by the FLSA. Although Plaintiff Green, and the members of the FLSA Collective and the State Law Class, performed their actual, principal job duties when they clock in at the beginning of the workday, and until they clock out at the end of the workday, Defendant did not pay this time worked, which was required to be paid as hours worked under the FLSA and Indiana Law as Defendant manipulated their time to Defendant's benefit. Had Defendant implemented rounding policies in compliance with the FLSA and Department of Labor regulations, Plaintiff Green, and the members of the FLSA Collective and the State Law Class, would have been compensated for additional overtime and non-overtime hours for which they were not paid.

**Defendant's Record Keeping Violations**

49. The FLSA requires Defendant to maintain accurate and complete records of employees' time worked and amounts earned and paid. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7.

50. For example, federal regulations require employers to make and keep payroll records showing information and data such as the employee's name, occupation, time of day and day of week which the workweek begins, regular hourly rate of pay for any week in which overtime compensation is due, hours worked each workday and total hours worked each workweek, total daily or weekly straight time earnings, total premium pay for overtime hours, total wages paid each pay period, and date of payment and pay period covered by the payment. 29 C.F.R. § 516.2.

51. Defendant kept records of hours worked by Plaintiff and of the members of the FLSA Collective and the State Law Class. However, at the time that the hours worked by Plaintiff and the members of the FLSA Collective and of the State Law were transmitted to payroll for compensation purposes, Defendant willfully and intentionally transmitted post-edited, rounded, modified, and inaccurate and/or incomplete records which do not include pre- and post-shift compensable work required by, performed for, and to the benefit of Defendant, which had the direct effect of reducing Defendant's labor costs to the detriment of Plaintiff and the members of the FLSA Collective and the State Law Class. Thus, Defendant willfully and intentionally did not properly record and pay all hours worked in violation of the FLSA and violated the FLSA and Indiana Law record keeping requirements.

**The Willfulness of Defendant's Violations**

52. In addition to the above allegations demonstrating the willfulness of Defendant's wage violations as provided for above, Defendant knew or should have known, as a substantial

employer, in accordance with its obligations under the FLSA and Indiana Law, that its workers, including Plaintiff and the members of the FLSA Collective and the State Law Class, were entitled to overtime compensation under federal law, and prompt payment of wages under Indiana Law.

53. By denying Plaintiff, and the members of the FLSA Collective and the State Law Class, overtime compensation as required by the FLSA, and prompt payment of all wages owed under Indiana Law, Defendant's acts were not based upon good faith, and in fact acted in bad faith. Through legal counsel as well as industry experience and custom, Defendant possessed ample access to the regulations and statutory provisions requiring the proper and prompt payment of overtime compensation under federal and Indiana Law, as recited in this Complaint, but either failed to seek out such information and guidance or did seek out the information and guidance but failed to adhere to the principles of compliance as required. Defendant therefore knew about the overtime compensation requirements of the FLSA and failed to comply with them or acted in reckless disregard as to its obligations under these laws in failing to comply with them.

54. Moreover, Defendant's overtime compensation payment, and general wage compensation payment, obligations were clearly known by Defendant, but nonetheless willfully and intentionally disregarded. For example, federal law requires employers subject to the FLSA's wage provisions, such as Defendant, to post, and keep posted, a notice explaining the overtime provisions of the FLSA in a conspicuous place in all of their establishments so as to permit employees to readily read it, which includes the language that the employer must pay

"**OVERTIME PAY**" at "[a]t least 1½ times the regular rate of pay for all hours worked over 40 in a workweek."[8]

55. Upon information and belief, Defendant posts the notices required to be posted under the FLSA which contains language outlining Defendant's compensation requirements.

56. By complying with federal overtime payment notice posting requirements, but nevertheless by not paying overtime compensation as required by these overtime payment notices, Defendant indisputably knew of the overtime requirements of the FLSA, or acted in reckless disregard for whether Plaintiff and members of the FLSA Collective and State Law Class were entitled to overtime compensation. Despite Defendant's knowledge of the overtime provisions of the FLSA and Indiana Law, including by physically posting notices recognizing that Defendant was required to pay overtime compensation for all overtime hours worked, Defendant has, for many years, continued to fail to pay overtime wages for overtime hours worked to Plaintiff and other members of the FLSA Collective and State Law Class.

57. As well, Defendant is indisputably a large and sophisticated employer, with, as described above, thousands of employees spread across dozens of locations throughout the Indianapolis area.

58. Under these circumstances, Defendant's violations of the FLSA were willful, within the meaning of the FLSA inasmuch as Defendant had actual notice of the requirements of the FLSA.

59. Moreover, as noted above, as a result of Defendant's timekeeping requirements, Defendant was specifically aware of the actual hours worked by Plaintiff and the members of the

[8] https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/minwagep.pdf (last accessed Nov. 5, 2025) (emphasis original).

FLSA Collective and of the State Law Class. However, at the time that the hours worked by Plaintiff and the members of the FLSA Collective and of the State Law Class were transmitted to payroll for compensation purposes, Defendant willfully and intentionally transmitted post-edited, rounded, modified, and inaccurate and/or incomplete records which do not include pre- and post-shift compensable work required by, performed for, and to the benefit of Defendant, which had the direct effect of reducing Defendant's labor costs to the detriment of Plaintiff and the members of the FLSA Collective and the State Law Class. Ultimately, Defendant altered hours worked records in an attempt to get around overtime pay requirements. Thus, Defendant willfully and intentionally did not properly record and pay all hours worked in violation of the FLSA, and was not acting in good faith by failing to promptly pay all wages owed as required by Indiana Law.

60. Inasmuch as Defendant's violation of the FLSA was willful within the meaning of the FLSA, Plaintiff and the members of the FLSA Collective are therefore entitled to liquidated damages equal to the amount of all unpaid overtime compensation, pursuant to 29 U.S.C. § 260, and additional (treble) damages pursuant to the IWPS as Defendant was not acting in good faith.

**FLSA COLLECTIVE OVERTIME ALLEGATIONS**
**(As to COUNT ONE)**

61. Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

62. Plaintiff brings this case on behalf of a group of employees of Defendant (the "FLSA Collective") who assert claims under the overtime provisions of the FLSA in this case by filing consent forms to join this action from this group of individuals:

> **All current and former non-exempt (including but not limited to commission-based, production-based, hourly, and salaried) employees of Defendant in the United States during the period of three years preceding the commencement**

**of this action to the present who worked overtime hours during one or more workweeks and who were not paid overtime compensation at one and one-half times the employees' regular rate of pay for all hours worked in excess of forty (40) hours per workweek by virtue of having their time edited and/or rounded.**[9]

63. Such persons are "similarly situated" with respect to Defendant's FLSA overtime violations, as to the collective group of employees identified above, in that all were non-exempt employees of Defendant, all were subjected to and injured by Defendant's unlawful practice of failing to pay overtime compensation for all hours worked in excess of forty (40) per workweek, and all have the same claims against Defendant for unpaid overtime compensation as well as for liquidated damages, attorneys' fees, and costs.

64. Plaintiff and the members of the FLSA Collective, having willfully been not paid at least the federal overtime wage for the overtime hours they worked for Defendant pursuant to the common policies described herein, are "similarly situated" as that term is used in 29 U.S.C. § 216(b) and the associated decisional law. *See* 29 U.S.C. § 207.

65. Plaintiff Green and the members of the FLSA Collective are similarly situated because, among other reasons, Plaintiff Green, as well as the members of the FLSA Collective, are owed approximately hundreds to thousands of overtime hours from working for Defendant and for Defendant's benefit for which they were not paid overtime compensation as a result of Defendant's time rounding and/or editing policies, and time manipulation practices in conformity with these policies, that led to less time paid than time worked.

66. Plaintiff and the members of the FLSA Collective have been similarly affected by the FLSA overtime violations of Defendant in one or more workweeks during the relevant time

[9] Plaintiff reserves the right to amend and refine the definition of to whom she seeks to have provided with Court-authorized notice based upon further investigation and discovery.

period, which amount to a single decision, policy, or plan to willfully avoid paying all earned federal overtime wages owed.

67. Plaintiff and the members of the FLSA Collective have been damaged by Defendant's willful refusal to pay at least the federal overtime wage for all overtime hours worked. As a result of Defendant's willful FLSA violations, Plaintiff Green and the members of the FLSA Collective are similarly situated to each other in that they are all entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

68. Throughout her employment with Defendant, Plaintiff was subjected to the same timekeeping and payroll policies and practices by Defendant – including the time rounding and/or editing policies, and time manipulation practices in conformity with these policies/practices, that led to less time paid than time worked – that the members of the FLSA Collective were subjected to.

69. Plaintiff is similarly situated to the members of the FLSA Collective and will prosecute this action vigorously on their behalf.

70. Plaintiff is entitled to send notice to all potential members of the FLSA Collective pursuant to Section 216(b) of the FLSA. Identification of potential members of the FLSA Collective is readily available from the timekeeping and compensation records, including timekeeping and payroll data, maintained by Defendant. For the purpose of notice and other purposes related to this action, their names, addresses, email addresses, and phone numbers are readily available from Defendant. Notice can be provided by means permissible under the FLSA and decisional law.

71. Immediate, prompt notice of this matter to similarly situated persons pursuant to 29 U.S.C. § 216(b) – by Court order – is proper and necessary so that such persons may be sent a

Court-authorized notice informing them of the pendency of this action and giving them the opportunity to "opt in."

72. Court Supervised Notice pursuant to 29 U.S.C. § 216(b) to potential members of the FLSA Collective is appropriate because they have been subjected to the common business practices referenced in the paragraphs above, and the success of their claims depends upon the resolution of common issues of law and fact, including, *inter alia*, whether Defendant satisfied the FLSA's requirements for payment of the statutory overtime wages.

73. The precise size and identity of the group of potential members of the FLSA Collective is readily ascertainable from the payroll records, timekeeping records, and/or employee and personnel records of Defendant that Defendant was required to maintain, pursuant to the FLSA. Plaintiff cannot yet state the exact number of similarly-situated persons but avers, upon information and belief, that the group of potential members of the FLSA Collective consist of approximately one thousand or more persons.

## INDIANA CLASS ACTION ALLEGATIONS
## (As to COUNT TWO)

74. Plaintiff incorporates by reference the allegations of paragraphs 1 through 60, as if fully rewritten herein.

75. Plaintiff also brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and a group of employees of Defendant who assert claims under Indiana's Wage Payment Statute (Ind. Code § 22-2-5, *et seq.*), and referred to herein as the "State Law Class", defined as:

> **All current and former non-exempt (including but not limited to commission-based, production-based, hourly, and salaried) employees of Defendant in Indiana during the period of three years preceding the commencement of this action to the present who were not promptly paid for all non-overtime and/or overtime hours worked by virtue of having their time rounded and/or edited.**

76. There are questions of law or fact common to the State Law Class, including but not limited to:

> Whether Defendant denied Plaintiff and other members of the State Law Class earned and owed compensation where, among other things, these employees were not promptly paid wages for their overtime hours worked at the overtime rates required to be paid, as well as wages for their non-overtime hours worked but not paid;
>
> Whether Defendant's denial of Plaintiff's and other members of the State Law Class's earned and owed compensation was a willful violation of federal and/or state law, entitling Plaintiff and other members of the State Law Class to exemplary, punitive, and/or other damages pursuant to the IWPS; and
>
> What amount of monetary relief will compensate Plaintiff and other members of the State Law Class for Defendant's failure to promptly pay all compensation, including overtime and non-overtime compensation, owed when the wages were required to be paid.

77. Plaintiff's claims are typical of the claims of other members of the State Law Class. Plaintiff's claims arise out of the same uniform course of conduct by Defendant, and are based on the same legal theories, as the claims of other State Law Class members.

78. The State Law Class, outlined above, is so numerous that joinder of all class members is impracticable. Plaintiff cannot yet state the exact number of class members but avers, upon information and belief, that the State Law Class consists of well over one thousand or more persons. The number of class members, as well as their identities, are ascertainable from the payroll and personnel records Defendant has maintained, and was required to maintain, pursuant to the FLSA and Indiana Law.

79. Plaintiff will fairly and adequately protect the interests of the State Law Class. Plaintiff's interests are not antagonistic to, but rather are in unison with, the interests of other State Law Class members. Plaintiff's counsel have broad experience in handling class action

litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the State Law Class in this case.

80. The questions of law or fact that are common to the State Law Class predominate over any questions affecting only individual members. The primary questions that will determine Defendant's liability to the State Law Class, listed above, are common to the State Law Class as a whole, and predominate over any questions affecting only individual class members.

81. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Requiring State Law Class members to pursue their claims individually would entail a host of separate suits, with concomitant duplication of costs, attorneys' fees, and demands on court resources. Many State Law Class members' claims are sufficiently small that they would be reluctant to incur the substantial cost, expense, and risk of pursuing their claims individually. Certification of this case as a class action pursuant to Fed. R. Civ. P. 23 will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

**COUNT ONE**
**(FLSA Overtime Violations)**
***On Behalf of Plaintiff Green and other Plaintiffs who Join this Action (the FLSA Collective) Pursuant to 29 U.S.C. § 216(b)***

82. Plaintiff incorporates by reference the allegations of paragraphs 1 through 71, and as if fully rewritten herein.

83. Plaintiff brings this claim for violation of the FLSA's provisions on behalf of herself and the FLSA Collective, as previously defined.

84. The FLSA requires that non-exempt employees are entitled to overtime compensation of "not less than one and one-half times" the employees' "regular rate" of pay. 29 U.S.C. § 207(a)(1).

85. Plaintiff and members of the FLSA Collective should have been paid overtime wages in the amount of 150% of their "regular rate" for all hours worked in excess of forty (40) hours per workweek.

86. Defendant did not pay overtime compensation to Plaintiff and the members of the FLSA Collective at the rate of one and one-half times their regular rate for all of their overtime hours worked.

87. Defendant knowingly, willfully, and/or in reckless disregard carried out an illegal pattern and practice of failing to pay Plaintiff and members of the FLSA Collective overtime compensation. Defendant's deliberate failure to pay all overtime compensation to Plaintiff and to the members of the FLSA Collective was neither reasonable, nor was the decision not to pay all overtime compensation made in good faith. By engaging in these practices, Defendant willfully violated the FLSA and regulations thereunder that have the force of law.

88. As a result of Defendant's willful violations of the FLSA, Plaintiff and the FLSA Collective were injured in that they did not receive the full overtime wages due to them pursuant to the FLSA. Under 29 U.S.C. § 216(b), this entitles Plaintiff and the members of the FLSA Collective to the due overtime compensation as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

## COUNT TWO
**(Indiana Wage Payment Statute Violations)**
***On Behalf of Plaintiff Green and the State Law Class Members (the State Law Class) Pursuant to Ind. Code § 22-2-5, et seq.***

89. Plaintiff incorporates by reference the allegations of paragraphs 1 through 60, and 74 through 81, as if fully rewritten herein.

90. Plaintiff brings this claim for violation of the Indiana Wage Payment Statute, Ind. Code § 22-2-5, *et seq*., on behalf of herself and the members of the State Law Class, under the class action procedural requirements contained within Fed. R. Civ. P. 23, for the period of three (3) years preceding the commencement of this action to the present.

91. By way of this Claim, Plaintiff is seeking, individually and on behalf of members of the State Law Class, all available damages, including all unpaid wages, all underpaid wages, all available liquidated (treble) damages, all attorney's fees, costs and expenses, plus any other damage Plaintiff the members of the State Law Class may be entitled pursuant to law.

92. The IWPS, Ind. Code § 22-2-5-1, provides, in pertinent part, that "[e]very person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee. The payment shall be made in lawful money of the United States, by negotiable check, draft, or money order, or by electronic transfer to the financial institution designated by the employee. Any contract in violation of this subsection is void… Payment shall be made for all wages earned to a date not more than ten (10) business days prior to the date of payment."

93. Defendant Eskenazi is a person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana.

94. By its actions and omissions described in this Complaint, Defendant Eskenazi did not pay each employee – including Plaintiff and other members of the State Law Class – the amount due to these employees, under the time requirements contained within Ind. Code § 22-2-5-1.

95. By failing to timely pay all wages owed and the amounts due, Defendant violated the IWPS.

96. By its actions and omissions described in this Complaint, pursuant to the IWPS, Ind. Code § 22-2-5-2, Defendant has failed to make payment of wages to its employees – including Plaintiff and other members of the State Law Class – as required by § 22-2-5-1, and is therefore liable to the Plaintiff and other members of the State Law Class for the amount of unpaid wages, an amount that may be recovered in any court having jurisdiction of a suit to recover the amount due to the employee, in addition to "costs in the case[, a] reasonable fee for the plaintiff's attorney and court costs."

97. Plaintiff Green further expressly asserts and alleges that Defendant acted in bad faith, and certainly was not acting or seeking to comply with the IWPS in "good faith," when it willfully, knowingly, and intentionally created a wage scheme that did not compensate hourly paid workers for all work hours from a first principal activity until a last principal activity each work day in a deliberate attempt to reduce labor costs or otherwise increase its bottom line, and deliberately deducted work time that was closely tracked in Defendant's timekeeping systems and processes, all of which resulted in underpaid wages on a class-wide basis, and for its continued failure under Indiana Law to pay all such wages owed – the amounts due – in a timely manner.

98. As such, pursuant to the IWPS § 22-2-5-2, Plaintiff is seeking, individually and on behalf of herself and members of the State Law Class, as liquidated damages for the failure to pay wages, an amount equal to two (2) times the amount of wages (treble damages) that remain unpaid to Plaintiff and other members of the State Law Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all members of the FLSA Collective and the State Law Class, respectfully prays that this Honorable Court:

A. Promptly order Defendant to provide all relevant policies and procedures regarding timekeeping and compensation, as well as all payroll, timekeeping, time rounding, time editing, and other relevant records, necessary to determine similarly situated individuals;

B. Promptly order Defendant to provide all contact information, including but not limited to names, dates of employment, addresses, telephone numbers, and email addresses, of similarly situated individuals;

C. Promptly issue Court-approved notice to similarly-situated persons informing them of this action, their ability to opt-in and become part of the FLSA Collective, and enabling them to opt in;

D. Toll the statute of limitations, *freely*, for all members of the FLSA Collective, from the date that this matter was initially filed until the date on which they file consents to join;

E. Certify this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of Plaintiff and other members of the State Law Class;

F. Enter judgment against Defendant, and in favor of Plaintiff, the FLSA Collective, and the members of the State Law Class, declaring that Defendant's activities, as alleged herein, violate the FLSA and Indiana Law, Ind. Code § 22-2-5, *et seq.*, and enjoining Defendant from continuing to violate the FLSA and Indiana Law, as well as awarding the relief set forth immediately below;

G. Award compensatory damages to Plaintiff and the members of the FLSA Collective pursuant to 29 U.S.C. § 216(b) in the amount of their unpaid overtime wages, as well as liquidated damages in an equal amount, in addition to penalty damages;

H. Award Plaintiff and other members of the State Law Class all wages not timely paid pursuant to the IWPS;

I. Award liquidated (treble), exemplary, and punitive damages under the IWPS to Plaintiff and members of the State Law Class;

J. Designate Plaintiff as representative of the Fed. R. Civ. P. 23 State Law Class, and counsel of record as Class Counsel for the State Law Class;

K. Award Plaintiff, and the members of the FLSA Collective and the State Law Class, prejudgment interest, post-judgment interest, costs, and attorneys' fees

incurred in prosecuting this action, expert fees, as well as statutory and/or other available damages and an award of damages representing Defendant's employers' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes; and

L. Enter such other and further relief as this Court deems equitable, just, and proper.

Respectfully Submitted,

*s/ John T. Steinkamp*
John T. Steinkamp
**JOHN STEINKAMP & ASSOCIATES**
5214 S East St., Suite D1
Indianapolis, IN 46227
Telephone: 317-780-8300
Fax: 317-217-1320
john@johnsteinkampandassociates.com

Seth R. Lesser*
Christopher M. Timmel*
**KLAFTER LESSER LLP**
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone: (914) 934-9200
seth@klafterlesser.com
christopher.timmel@klafterlesser.com

*and*

Joseph F. Scott*
Ryan A. Winters*
Kevin M. McDermott II*
**SCOTT & WINTERS LAW FIRM, LLC**
11925 Pearl Rd., Suite 308
Strongsville, Ohio 44136
Telephone: (216) 912-2221
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

*Attorneys for Plaintiff, Proposed FLSA Collective Action Plaintiffs, and Proposed Fed. R. Civ. P. 23 Class Counsel*

* Proceeding *Pro Hac Vice* or to be filed

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully Submitted,

*s/ Seth R. Lesser*
John T. Steinkamp

*One of the Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2025, a copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system. Notice of filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Respectfully Submitted,

*s/ John T. Steinkamp*
John T. Steinkamp

*One of the Attorneys for Plaintiff*